(10 Misc. Rep. 467.)

PEASE v. GILLETTE et al.

(Supreme Court, Special Term, New York County. December, 1894.)

POWERS—EXECUTION.

 Testator devised real estate to his widow, in trust for the benefit of herself and children; the interest of the children not to vest, however, until the death of the widow, or until she had exercised the power of sale given her by the will. A parcel of the land was condemned for a public use, and the widow and children executed a deed thereof to the board by which it was condemned, naming as the consideration the amount of the award; and they procured an order to be entered directing payment of the award to the widow, as trustee under the will, and that she hold it on the same trusts as those named in the will. *Held*, that there was not an exercise of the power of sale as to such realty.

Action by Charles G. Pease, as executor, against Gladys M. Gillette, as temporary administratrix, and others, for an accounting.

Richard L. Sweezy, for plaintiff.
Amasa A. Redfield, for defendants.
Luke A. Lockwood, for guardian ad litem.

BARRETT, J. The important question here is whether there was a sale of the real estate under the provisions of John Egan's will, for the purpose of distribution. As was said in Pease v. Eagan, 131 N. Y. 267, 30 N. E. 102, where this will was before the court of appeals:

 "The title of the real estate remained in the trustee until it should be sold, and if a child died without issue before the death of the mother, and before any sale, the share which would otherwise have gone to such child or its issue upon the mother's death, and the subsequent sale and distribution of the proceeds of the real estate, went to the surviving brother or sister."

John Egan died leaving a widow and two children. These children were Mrs. Pease, who died in 1883, the present plaintiff's testatrix, and William G. Egan, who died in 1890. The widow survived both children. She died in 1892. Upon the facts as they

appeared in Pease v. Eagan, supra, Peckham, J., said that Mrs. Pease died—

"In the lifetime of the mother, without issue, and before any sale or distribution of the proceeds of the real estate. The share of the sister (Mrs. Pease) in such realty or its proceeds, upon her death without issue, passed to her brother (William G. Egan) by virtue of the will of the testator."

That case, howevei, is not conclusive here upon these facts, as the observations upon that head were merely incidental to the question of subrogation, which was there actually decided. It·is authority, however, for the construction given to the will. That construction is that the devise of the real estate to the children was, during the life of the widow, not absolute, but contingent; that is, contingent upon a sale which the trustee was authorized to make after the children arrived at the age of 21 years, provided the widow consented, and she and the children should make some satisfactory arrangement securing to her the punctual payment of an annuity during her life. Until such a sale the interest of the children was spoken of as contingent. "The estate," said Peckham, J., "had absolutely vested in neither." As Mrs. Pease died without issue, it follows that, unless there was such a sale as the will contemplated prior to her death, her share went to William G. Egan, and is now vested in the latter's infant child.

The question under consideration relates to two parcels of real estate, one in William street, and the other in 131st street. The former was condemned for the purposes of the Brooklyn bridge. The order of condemnation was made on the 11th, and was filed on the 14th, of June, 1880. Upon the twelfth of the same month, the widow and the two children, who were then of age, executed a deed of the condemned property to the bridge trustees. The consideration expressed in this deed was the same as that awarded by the court in the order referred to, namely, $24,500. This deed was evidently the practical completion of the condemnation proceedings. It was not the result of an independent sale of the premises. It simply confirmed the title already acquired, subject only to the payment of the $24,500. No arrangement for an annuity was made with the widow, nor was there anything in the transaction to justify the inference that she waived her right thereto. On the contrary, the facts point clearly to the conclusion that it was the intention of all parties to treat the proceeds as an enforced substitution for the real estate. Mrs. Pease (then Miss Egan) was a party to the condemnation proceedings. She was personally served with the petition and notice of presentation. She duly appeared by attorney, and was examined as a witness before the commissioners. She testified that she had acted as her mother's agent with regard to the premises in question, and had collected all the rents. She ascribed the falling off of the rents to the bridge. More than any one else, therefore, she seems to have been acquainted with the proceedings and their effect. In the final order of condemnation, she secured, through her attorney, the following provision:

"And on motion of F. F. Vandeveer, attorney for said Clara M. Egan, individually and as trustee, as aforesaid, and Clara E. Egan and William G.

Egan. It is ordered that said award of twenty-four thousand five hundred dollars, less the amount of said water rate of eighteen dollars, be paid to said Clara M. Egan, as trustee under the last will and testament of John Egan, deceased, to be administered and held upon the same trusts, and the income to be applied to the same uses and purposes, as, in and by the said last will and testament of John Egan, deceased, the real estate hereinbefore described, and the income thereof, were directed to be held and applied."

It is contended that the court had no power to make this provision. But whether it had or not is quite immaterial. The crucial consideration is that all parties applied to the court for the provision, and thus plainly indicated their intention, understanding, and agreement. In July of the following year,—a part of the trust funds, consisting, undoubtedly, of the proceeds of the bridge transaction, having been invested by the trustee (who was the widow) in other real estate,—Mrs. Pease (she having married in the meantime) wrote to her attorney the following letter:

"July 15, 1881.

"Mr. Vandeveer: Will you please see that mama executes the proper papers showing that the houses numbers 234 and 233 East 85th street are held in trust by her for Will and myself, as they were bought with the money of the estate.

"Respectfully,                                    Mrs. Clara E. Pease."

In accordance with this request, Mrs. Egan, in the following September, executed a declaration of trust to the effect that she held the property only—

"As the executrix and trustee under the last will and testament of John Egan, * * * for the use and benefit of the legatees and devisees of the estate of the said John Egan, deceased, named in said will, and that she had no beneficial interest in the premises, except such interest as was bequeathed and devised to her, as widow, under and by virtue of the provisions of said will."

There is a dispute as to whether Mrs. Pease was aware of the precise terms of this declaration of trust, but I think it reasonably clear, upon the evidence, that the instrument was shown to both Mrs. Pease and her husband, that it was discussed by them, that its contents were satisfactory to them, and that Mrs. Pease herself was present at its execution. It further appears from the trustee's account that the income of this real estate was divided, up to the time of Mrs. Pease's death, as directed by the will. Thus Mrs. Pease received her share of such income, quite the same as she would have received her share of the income derivable from the William street property, had that property not been condemned, and the proceeds reinvested. It is impossible to hold, under these circumstances, that the bridge transaction involved a sale of the William street property under the discretionary power given to the trustee, subject to the widow's consent, and to an arrangement between the parties for an annuity. In my judgment, there was in law no conversion of this real estate into personalty for distribution under the provisions of the will, but, on the contrary, there was a distinct understanding and arrangement between all parties that the actual conversion should not have that effect. The same views apply to the property on 131st street. This transaction was but a sale in form. It was in reality a mere exchange of properties. The con-

tract therefor expresses this in terms. To effectuate this exchange it was, of course, necessary that there should be formal deeds from each party to the other of the respective properties. But the substantial transaction was the substitution of one piece of real estate for another. The trustee received nothing for the property which she conveyed, save that conveyed to her. In fact, she gave her grantee $16,000 of the trust moneys,—undoubtedly, a part of the $24,500 received upon the bridge transaction,—in addition to the property which she conveyed. The children united in the deed of the 131st street property; and later the declaration of trust, to which reference has been made, was requested, evidently for the purpose of avoiding any possible question as to the intention of the parties, or as to the effect of the transaction. When Mrs. Pease requested Mr. Vandeveer to have her mother execute proper papers showing that the houses were held in trust for Will and herself, she did not mean an implied trust, resulting merely from the investment of the funds of decedent's estate in land. She clearly referred to the trust provisions of the will. This is evidenced by all the surrounding circumstances, as well as by her approval of the terms of the declaration of trust which was subsequently executed by her mother. Thus the substituted property was treated by all parties as real estate. In legal intendment, it became a part of that embraced within the devise. It was, in substance and effect, the 131st street property enhanced in value by the trust money which was put into the exchange,—trust money which was itself real estate, within the clear understanding of the parties.

It does not follow, however, from these conclusions that the complaint should be dismissed. I agree with the plaintiff that he is entitled to an accounting with regard to the personal estate, and to the rents of the real estate accruing prior to Mrs. Pease's death. The right to maintain an action for such an accounting was sustained upon the trial, and I adhere to the conclusions then arrived at. I also concur in the plaintiff's views with regard to the statute of limitations, and to the effect of the death of Mrs. Egan upon the proceeding for a voluntary accounting in the surrogate's court. The latter proceeding terminated with her death. The statute of limitations did not run so long as the property remained in the possession of the trustee, unaccounted for. In re Camp, 126 N. Y. 389, 27 N. E. 799. I refer to such an accounting as that to which the plaintiff is now limited. It is unnecessary to consider the same question with regard to the main points of dispute, they having been decided adversely to the plaintiff upon the merits. There should therefore be an interlocutory judgment stating the rights of the parties in accordance with the views above expressed, and directing a reference to take the account as herein limited, which should include the substituted trustee. Ordered accordingly.